IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**DANFOSS SCROLL TECHNOLOGIES, LLC**                                 **PLAINTIFF**

VS.                              CASE NO. 11-6014

**PPG INDUSTRIES, INC.**                                             **DEFENDANT**

### SECOND AMENDED COMPLAINT

Plaintiff Danfoss Scroll Technologies, LLC ("Plaintiff" or "Scroll"), for its Complaint against Defendant PPG Industries, Inc. ("PPG"), states.

### Parties, Jurisdiction and Venue

1. Scroll is a Delaware limited liability company with its principal place of business in Arkadelphia, Arkansas. Scroll has one member: Danfoss Holding, Inc., f/k/a Danfoss Commercial Compressors, Ltd., which is a Delaware corporation with its principal place of business in Lawrenceville, Georgia. At its manufacturing plant located in Arkadelphia, Arkansas, Scroll manufactures industrial compressors for use in heating, ventilation and air-conditioning applications.

2. PPG is a Pennsylvania corporation with a principal place of business in Pittsburgh, Pennsylvania. PPG, *inter alia*, manufactures and sells chemicals to be used in metal pretreatment processes, and provides expertise and advice regarding the application its chemicals and processes. PPG is registered to do business and is doing business in Arkansas.

3. In addition to its registration in Arkansas, PPG has sufficient contacts with the State of Arkansas to be subject to suit pursuant to *Arkansas Code Ann. §16-4-101*, including, *inter alia*, its transacting business in this state, its receipt of substantial revenues

1

from activities in this state, and its causing injury in this state.

4. This action thus involves citizens of different states.

5. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property which is the subject of this action is situated in this judicial district.

**Factual Allegations**

8. Scroll uses various chemicals to apply a surface coating to component parts used in the manufacture of compressors. The proper surface coating of these component parts is essential to the proper operation of the compressors.

9. In or about January 2009, Scroll sought assistance from PPG in supplying suitable chemicals and coating processes to achieve the proper surface coating for its component parts.

10. In connection with this request, Scroll provided information and documentation to PPG regarding its compressors, component parts and manufacturing process.

11. Scroll provided this information so that PPG could become familiar with Scroll's needs, and in order for PPG to determine whether it could provide suitable chemicals and expertise to Scroll in the manufacture of its compressors.

12. After becoming familiar with Scroll's compressors and manufacturing process, as well as the particular purpose for which the chemicals were to be used, PPG

represented and warranted that it could provide the chemicals, coating processes and expertise necessary to apply a suitable surface coating to the component parts used in the manufacture of Scroll's compressors.

13.     At that time, PPG also represented to Scroll that it was a leading manufacturer of pretreatment coatings that offered world-class coating products and application experience.

14.     PPG further represented that it was ready to assist in every facet of Scroll's manufacturing process in order to support Scroll in achieving the highest standards of quality and cost effectiveness for Scroll's customers.

15.     PPG further represented and warranted that it could and would provide total responsibility for all of Scroll's metal pretreatment and coating needs, and that its chemicals, as well as its experience and processes for applying those chemicals, were appropriate and suitable for Scroll's particular purpose in achieving a proper surface coating for the component parts used in the manufacture of Scroll's compressors.

16.     PPG further represented that it would provide guidance and training to Scroll personnel in the use of PPG's chemicals, and would also monitor the application of its chemicals at Scroll's plant during the manufacturing process.

17.     In reliance on PPG's representations and warranties, Scroll engaged PPG to supply the chemicals, coating processes and expertise necessary to apply appropriate surface coatings to the component parts used in the manufacture of Scroll's compressors.

18.     On or about June 1, 2010, Scroll submitted its purchase order #7609426 to PPG for chemicals that PPG represented were appropriate and suitable for application to the component parts used by Scroll.  The purchase order is attached hereto as Exhibit A

and is incorporated herein by reference.

19. By its express terms, Scroll's purchase order was made subject to the terms of purchasing as set forth in Exhibit B, which is attached hereto and incorporated herein by reference.

20. PPG filled the purchase order and made deliveries of chemicals to Scroll's manufacturing facility in Arkadelphia, Arkansas.

21. PPG made no changes or alterations to the terms of purchasing set forth in Exhibit B attached hereto.

22. In connection with the purchase of PPG's chemicals and coating processes, PPG also provided advice and guidance to Scroll personnel in making necessary modifications to Scroll's manufacturing process to accommodate and make effective use of PPG's chemicals.

23. In connection with the purchase of PPG's chemicals and coating processes, PPG also provided training to Scroll personnel in the effective use and application of PPG's chemicals in Scroll's manufacturing process.

24. In connection with the purchase of PPG's chemicals and coating processes, PPG also made periodic visits to Scroll's plant while manufacturing was underway in order to inspect, monitor and direct the use and application of its chemicals in Scroll's manufacturing process.  During these visits, PPG recommended further changes, modifications and adjustments to Scroll's manufacturing process in order to accommodate and make effective use of PPG's chemicals.

25. During the summer of 2010, Scroll was forced to suspend its use of PPG's chemicals and coating processes after it became apparent that PPG's chemicals and

processes were producing an unacceptable surface coating on the component parts that caused premature wear to crankcase seals in the compressors. This premature wear led to failures of the compressors manufactured with PPG's chemicals and coating processes and rendered the compressors unmerchantable.

26. In addition, as a result of the defective surface coating produced by PPG's chemicals and coating processes, Scroll was forced to interrupt its manufacturing of compressors, suspend shipments of Scroll's compressors, notify Scroll's customers of the defects, and initiate a nationwide recall of all Scroll compressors manufactured with PPG's chemicals and coating processes, all at significant cost and expense to Scroll.

27. Further, as a result of the defective surface coating produced by PPG's chemicals and coating processes, Scroll was forced to engage in remediation efforts on behalf of its customers and to honor warranty claims with respect to compressors that had failed as a result of PPG's chemicals and coating processes, all at significant cost and expense to Scroll.

28. On September 24, 2010, Scroll provided PPG with notice of breach of warranties caused by the failure of PPG's chemicals and coating processes, and demanded that PPG compensate and indemnify Scroll for all its resulting costs, expenses and damages.

29. PPG has failed and refused to compensate and indemnify Scroll.

## COUNT I
**(Breach of Contract)**

30. The allegations contained in Paragraphs 1-29 are restated as if fully set forth herein.

31. Scroll and PPG entered into an agreement whereby PPG undertook to

provide suitable chemicals and coating processes that would enable Scroll to manufacture its compressors.

32.     The chemicals and coating processes supplied by PPG were unsuitable and caused defects to the surface of component parts coated with the chemicals and processes, which rendered Scroll's compressors defective.

33.     As a result of PPG's failure to provide suitable chemicals and coating processes, PPG breached its contract with Scroll, causing Scroll to suffer damages.

## COUNT II
### (Breach of Express Warranty)

34.      The allegations contained in Paragraphs 1-33 are restated as if fully set forth herein.

35.     PPG expressly warranted that its chemicals and processes were suitable for use by Scroll in the manufacture of Scroll's compressors.

36.     The chemicals and processes supplied by PPG caused material defects to the compressors that rendered them unmerchantable.

37.     Scroll promptly notified PPG of the defects and the resulting injuries and damages suffered by Scroll.

38.     As a result of the defects caused by PPG's chemicals and processes, PPG breached its express warranties, causing Scroll to suffer damages.

## COUNT III
### (Breach of Warranty of Merchantability)

39.     The allegations contained in Paragraphs 1-38 are restated as if fully set forth herein.

40.     PPG is a merchant who regularly sells goods, including chemicals to be used in metal pretreatment processes.

41. PPG sold chemicals to Scroll that were not merchantable at the time of sale, which proximately caused injury and damages to Scroll.

42. Scroll promptly notified PPG of the defects and the resulting injuries and damages suffered by Scroll.

43. As a result of the defects caused by PPG's chemicals, PPG breached warranties of merchantability, causing Scroll to suffer damages.

## COUNT IV
### (Breach of Warranty of Fitness for a Particular Purpose)

44. The allegations contained in Paragraphs 1-43 are restated as if fully set forth herein.

45. PPG knew or had reason to know that Scroll required appropriate chemicals to produce a suitable coating on the surface of component parts that could be used in the manufacture of its compressors.

46. PPG knew or had reason to know that Scroll was relying on PPG's skill and judgment to select the appropriate chemicals to produce a suitable coating on the surface of Scroll's component parts.

47. The chemicals supplied by PPG were not suitable for the particular purpose for which they were intended, thereby causing injury and damage to Scroll.

48. Scroll promptly notified PPG of the defects and the resulting injuries and damages suffered by Scroll.

49. As a result of the unsuitability of PPG's chemicals, PPG breached warranties of fitness for a particular purpose, causing Scroll to suffer damages.

## COUNT V
### (Unjust Enrichment)

50. The allegations contained in Paragraphs 1-49 are restated as if fully set forth

herein.

51.    Scroll paid the full purchase price to PPG for the chemicals and process it purchased, thereby conferring a benefit on PPG.

52.    PPG accepted Scroll's payment of the full purchase price.

53.    In return, PPG sold Scroll defective and/or unsuitable chemicals, and designed a faulty coating process, which Scroll was forced to discontinue using and to replace in full.

54.    Under these circumstances, it would be inequitable for PPG to retain the benefits of Scroll's payment in full of the purchase price.

## COUNT VI
### (Violation of Arkansas Code Ann. § 4-88-107 (Arkansas Deceptive Trade Practices Act))

55.    The allegations contained in Paragraphs 1-54 are restated as if fully set forth herein.

56.    Prior to the agreement, PPG knowingly making false representations as to the quality, characteristics, uses, benefits, and/or certification of its chemicals and coating processes.

57.    PPG made these false representations with the intent to induce Scroll to purchase its chemicals and coating processes.

58.    PPG's representations constitute violations of Arkansas Code Ann. § 4-88-107 (the Arkansas Deceptive Trade Practices Act).

59.    As a direct and proximate result of PPG's deceptive trade practices, Scroll has suffered damages.

## COUNT VII
### (Negligence)

60. The allegations contained in Paragraphs 1-59 are restated as if fully set forth herein.

61. Scroll requested that PPG recommend and supply chemicals and a coating process suitable for Scroll's manganese coating process.

62. PPG also undertook to inspect, monitor and direct the use and application of its chemicals in Scroll's manufacturing process.

63. PPG owed Scroll a duty of reasonable care in (1) selecting and recommending chemicals and coating processes that were suitable for use in Scroll's manufacturing operations, (2) providing advice and recommendations related to the coating process, and (3) inspecting, monitoring and directing the use and application of its chemicals in Scroll's manufacturing process.

64. PPG breached its duty of reasonable care by (1) failing to select and recommend chemicals and coating processes that were suitable for use in Scroll's manufacturing operations, (2) failing to provide advice and recommendations related to the coating process, and (3) failing to inspect, monitor and direct the use and application of its chemicals in Scroll's manufacturing process.

65. As a proximate result of PPG's breach of its duty of care, Scroll suffered injuries and damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Danfoss Scroll Technologies, LLC respectfully demands relief as follows:

A. Issuance of a Judgment in Plaintiff's favor and against PPG;

  B. Damages to compensate Scroll in excess of the amount required for federal diversity jurisdiction, including without limitation lost revenue and damages for the expenses incurred in recalling and replacing the affected compressors and indemnification of all claims brought against Scroll or its related entities arising from the affected compressors;

  C. The costs of this action, interest, attorney's fees; and

  D. Such further relief as this Court deems appropriate.

Plaintiff hereby demands a trial by jury.

          WILLIAMS & ANDERSON PLC
          111 Center Street, 22nd Floor
          Little Rock, Arkansas 72201
          Telephone:  (501) 372-0800
          Facsimile:   (501) 372-6453


         By: /s/ David M. Powell
          David M. Powell, Ark. Bar No. 69062
          Andrew King, Ark. Bar No. 2007176
          dmpowell@williamsanderson.com
          aking@williamsanderson.com


         Stephen M. Prignano
         (Rhode Island Bar No. 3649)
         Raymond M. Ripple
         (Rhode Island Bar No. 6489)
         EDWARDS WILDMAN PALMER LLP
         2800 Financial Plaza
         Providence, RI 02903
         (401) 274-9200
         (401) 276-6611 (Fax)
         sprignano@edwardswildman.com
         rripple@edwardswildman.com

         *Attorneys for Danfoss Scroll Technologies, LLC*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Stephen R. Lancaster
slancaster@wlj.com

Gordon S. Rather, Jr.
grather@wlj.com

Paul D. Steinman
psteinman@eckertseamans.com

Louis A. DePaul
ldepaul@eckertseamans.com

/s/ David M. Powell
David M. Powell, Ark. Bar No. 79223